IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Teresa A. Simmons,                )
                                  )
            Plaintiff,            )
                                  )  Case No. C-1-01-880
      vs.                         )
                                  )
Fischer Management, Inc.,         )
                                  )
            Defendant.            )

Memorandum and Order

        Plaintiff initiated this action after resigning her
employment as a condominium sales counselor for Defendant.  She
alleges that her resignation was a constructive discharge in
violation of Ohio public policy.  She also alleges that her
constructive discharge constitutes an act of sex, race, and
handicap discrimination, as well as an act of retaliation, all in
violation of Ohio and federal law.  This matter is before the
Court upon Defendant's motions for summary judgment with respect
to all of Plaintiff's claims (Doc. 14 and Doc. 26).

1.  Background

        Plaintiff is a Caucasian woman and is married to an
African-American man.  She suffers from Meniere's Disease, which
affects the ears, resulting in balance and other difficulties.

        She began working as a condominium sales counselor for
Defendant in December 1999.  Her supervisor throughout her one-
year tenure in Defendant's employ was Greg Beckett, who was not
initially aware that Plaintiff's husband was African-American but

became so when Plaintiff informed him after he had made some racially insensitive remarks.  Plaintiff acknowledges that Beckett did not repeat the offense.

In July of 2000, Plaintiff was moved from one complex, where she had been successful, to another, where conditions were not as favorable for sales.  She refused Greg Beckett's suggestion that she put false "Sold" signs in front of condominia.  She was unable to give prospective buyers documents pertaining to the condominia because they had not been printed.

Her sales were very poor at the new complex, Harbour Watch.  After she had been there for approximately one month, Greg Beckett asked her for a business plan for sales.  She estimated that she would sell twelve condominia by the end of 2000.  In fact, she had sold only four as of the end of November. Greg Beckett began planning to terminate her employment. Plaintiff apparently learned of that plan and resigned instead on December 11, 2000.

In this action, Plaintiff alleges that she was constructively discharged by virtue of her refusal to place false "Sold" signs in front of condominia, the unavailability of condominium documents required by Ohio law to be provided to purchasers, and her knowledge that Greg Beckett was preparing to terminate her employment.  She alleges that she resigned because she did not want to engage in fraudulent or unlawful activity.

Plaintiff alleges that her constructive discharge constitutes wrongful discharge in violation of Ohio public

2

policy; race and sex discrimination in violation of Title VII, 42
U.S.C. § 2000e, *et seq.*, and Ohio Revised Code ("O.R.C.") §
4112.02(A); and disability discrimination in violation of the
Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et
seq.*  She further alleges that the requirement that she formulate
a business plan was an act of retaliation for her informing
Messrs. Beckett and Menchhoffer that she might require surgery
for Meniere's disease and that that act of retaliation and her
constructive discharge violated O.R.C. § 4112.02(I).

Defendant moves for summary judgment with respect to
each of Plaintiff's claims.  Defendant argues that Plaintiff
cannot establish that her December 2000 resignation was a
constructive discharge.  Moreover, Defendant contends that
Plaintiff cannot establish that any of Defendant's allegedly
adverse actions toward her were motivated by animus against her
on the basis of her gender, disability status or perceived
disability status, or marriage to an African-American.  Finally,
Defendant contends that Plaintiff cannot prove that she suffered
any act of retaliation as a result of notifying her supervisor
that she might require surgery, even if she could establish that
she is disabled, which, Defendant contends, she is not.

### 2.   The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions,
answers to interrogatories, and admissions on file, together with
the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(c).  The
evidence presented on a motion for summary judgment is construed
in the light most favorable to the non-moving party, who is given
the benefit of all favorable inferences that can be drawn
therefrom.  United States v. Diebold, Inc., 369 U.S. 654 (1962).
"The mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion
for summary judgment; the requirement is that there be no genuine
issue of material fact."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986)(emphasis in original).

     The Court will not grant summary judgment unless it is
clear that a trial is unnecessary.  The threshold inquiry to
determine whether there is a need for trial is whether "there are
any genuine factual issues that properly can be resolved only by
a finder of fact because they may reasonably be resolved in favor
of either party."  Anderson, 477 U.S. at 250.  There is no issue
for trial unless there is sufficient evidence favoring the non-
moving party for a jury to return a verdict for that party.  Id.

     The fact that the weight of the evidence favors the
moving party does not authorize a court to grant summary
judgment.  Poller v. Columbia Broadcasting System, Inc., 368 U.S.
464, 472 (1962).  "[T]he issue of material fact required by Rule
56(c) . . . to entitle a party to proceed to trial is not
required to be resolved conclusively in favor of the party
asserting its existence; rather, all that is required is that

4

sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." First National Bank v. Cities Service Co., 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Id. at 323; Anderson, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time

for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  Id.; Anderson, 477 U.S. at 250.  Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

   3.  Analysis

      A.  Constructive Discharge

All of Plaintiff's claims, with the exception of a portion of her claim for retaliation in violation of Ohio law, depend upon her being able to prove that she was constructively discharged from her employment by Defendant.  Because she cannot do so, each of those claims fails.

In order to prove constructive discharge under Ohio law, Plaintiff must show that she was subjected to working conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."

6

Easter v. Jeep Corp., 750 F.2d 520, 522-23 (6th Cir. 1984).  "The constructive discharge issue depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct on the employee."  Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982).  A constructive discharge claim exists if Plaintiff can show that "a reasonable employer would have foreseen that a reasonable employee . . . would feel constructively discharged." Wheeler v. Southland Corp., 875 F.2d 1246, 1249 (6th Cir. 1989).

Plaintiff bases her claim that she was constructively discharged upon three actions by Defendant: the request that she place false "Sold" signs in front of Harbour Watch condominia, Defendant's failure to make condominium documents available for her distribution to prospective purchasers, and Greg Beckett's intention to terminate her employment.  The first two actions began when, or shortly after, Plaintiff went to Harbour Watch, yet she did not resign her employment at that time.  She apparently complained about the unavailability of the condominium documents, but she has identified no evidence of a response from Defendant that would have caused a reasonable person in her shoes to feel compelled to resign.  The evidence demonstrates, at best, that Greg Beckett was irritated by her repeatedly raising the issue.  She admits that Greg Beckett took no action against her whatsoever when she refused to place false "Sold" signs in front of condominia.  In short, she simply cannot establish, on the

7

basis of either of those actions or the two in combination, that a reasonable employer would have foreseen that a reasonable employee would feel compelled to resign.

Plaintiff apparently became aware in December 2000 that Greg Beckett planned to terminate her employment in early 2001 if her sales did not improve.  To the extent that Plaintiff felt compelled to resign by virtue of that awareness, it was not because Defendant had made her working conditions so difficult or intolerable but because she wanted to avoid being fired.  The knowledge that one may be discharged, absent intolerably difficult or unpleasant working conditions, does not amount to a constructive discharge.  The Court is not persuaded that Plaintiff can prove that she was constructively discharged.  For that reason, her claims of wrongful discharge in violation of Ohio public policy, race and sex discrimination in violation of Title VII and O.R.C. § 4112.02(A), disability discrimination in violation of the ADA and O.R.C. § 4112.02(A) fail, as does the portion of her claim for retaliation in violation of O.R.C. § 4112.02(I) that is based upon the alleged constructive discharge. Even were Plaintiff able to prove constructive discharge, however, her claims based upon that discharge would fail.

B.  Absence of Evidence of Pretext

Absent direct evidence of discrimination, Plaintiff may prove her claims of sex, race, and disability discrimination only by establishing the elements of a prima facie case.  See

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Roush v. Weastec, Inc., 96 F.3d 840, 843 (6th Cir. 1996).  "The burden of establishing a prima facie case of disparate treatment is not onerous."  Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).  After the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate some legitimate reason for the alleged adverse employment action that is not prohibited by law.  See Burdine, 450 U.S. at 253; Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978); McDonnell Douglas, 411 U.S. at 802; Wrenn v. Gould, 808 F.2d 493 (6th Cir. 1987). The burden of persuasion, however, remains at all times upon the plaintiff. See Burdine, 450 U.S. at 256; Haynes v. Miller, 669 F.2d 1125, 1126-27 (6th Cir. 1982).  Accordingly, once the employer meets its burden of going forward, the burden shifts back to the plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's articulated reason for the adverse action is mere pretext.  See Burdine, 450 U.S. at 254-56; McDonnell Douglas, 411 U.S. at 804; Wrenn, 808 F.2d at 501.

        "There are no hard and fast rules as to . . . what evidence is needed in order to establish pretext."  Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc., 690 F.2d 88, 97 (6th Cir. 1982).  The United States Court of Appeals for the Sixth Circuit has identified three models for proving pretext:

    (1)  evidence that the reasons stated by the
         defendant had no basis in fact;

9

     (2)   evidence that those reasons did not actually
           motivate the adverse employment action; and

     (3)   evidence that those reasons were insufficient
           to warrant the adverse employment action.

See Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994)(citing McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir. 1993)).  In Kline v. Tennessee Valley Authority, 128 F.3d 337, 346 (6th Cir. 1997), the court clarified that

> when the first or third findings of pretext
> are demonstrated, a court is permitted to
> infer discrimination from the circumstances.
> Thus, when a plaintiff proves that the
> defendant's proffered reasons either have no
> basis in fact or are insufficient to motivate
> [the adverse action], a permissive inference
> of discrimination arises.

(Citations omitted).  The court distinguished those two situations from the second pretext model identified in Manzer:

> the two situations discussed above [are
> distinguished] from the situation when the
> reasons offered by the defendant do not
> actually motivate the [adverse action].  In
> this situation, the plaintiff admits the
> factual basis underlying the employer's
> proffered explanation and further admits that
> such conduct could motivate [the adverse
> action].  . . . [I]n this situation, a
> plaintiff is required to introduce additional
> evidence of discrimination.

Kline, 128 F.3d at 346 (citations and quotation marks omitted; emphasis in original).  The court stated that, unless the plaintiff offers evidence of the type identified in the first or

third Manzer models, the plaintiff must "introduce additional evidence of discrimination" in order to refute the defendant's stated reason for the adverse employment action.  Id. Plaintiff's discrimination claims under Ohio law are analyzed in the same fashion.  See Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission, 66 Ohio St.2d 192, 196 (1981).

The Court assumes, for the sake of argument only, that Plaintiff is able to establish prima facie claims of sex, race, and disability discrimination in violation of Ohio and federal law based upon her alleged constructive discharge.  Accordingly, the Court's analysis turns to Defendant's articulated reason for the alleged adverse employment action.

The Court observes that Plaintiff has not been entirely consistent with respect to the actions of Defendant that were the causes of her constructive discharge.  She has identified the persistent unavailability of condominium documents and the knowledge that she was likely to be discharged within a month of her resignation.  With respect to the first cause, Defendant has stated that the documents had not yet been printed.  Plaintiff has not identified evidence to the contrary or evidence that otherwise tends to prove pretext in accordance with any of the models identified in Manzer, supra.

As regards the possible termination of Plaintiff's employment in early 2001, Defendant has stated that Plaintiff's poor sales performance at Harbour Watch was the reason for Greg

11

Beckett's plan to terminate her employment.  Poor sales constitute a legitimate and nondiscriminatory reason for a discharge.  Accordingly, Defendant has satisfied its burden of production, and the burden is shifted to Plaintiff to identify evidence that tends to show that Defendant's stated reason is pretext.

In an effort to demonstrate pretext, Plaintiff has argued the following:  employees are typically given thirty days to establish a sales record at a new complex before being asked to develop a business plan, while Plaintiff was not afforded that period of time; the termination of Plaintiff's employment for poor sales at Harbour Watch was not a reasonable business decision; Greg Beckett treated Plaintiff differently after he learned that her husband was an African-American; Beckett asked Plaintiff to develop a business plan in response to her request for leave for surgery; Beckett told a colleague of Plaintiff's that Plaintiff was married to an African-American, was trouble, and was not manageable; Beckett said, at about the time of Plaintiff's resignation, that he would never hire another woman.

Plaintiff was, in fact, afforded approximately thirty days after transferring to Harbour Watch before being required to develop a business plan in response to poor sales.  At her deposition, Plaintiff testified that she moved to Harbour Watch in early August 2000.  See Plaintiff's deposition, p. 63.[1]  She

_____

[1]Her later affidavit to the contrary is inadmissible to the extent that it deviates from her deposition testimony.  See Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986).

was required to develop a business plan on or about September 6, 2000.  <u>See</u> Plaintiff's deposition, Ex. 16.  She submitted that plan on September 11, 2000.  <u>See</u> <u>id</u>., Ex. 8.  By any reckoning, the period from early August to September 6 or 11 is approximately thirty days.  Plaintiff cannot prove a deviation between Greg Beckett's treatment of her and his treatment of other sales counselors and, accordingly, cannot establish pretext on the basis of such a deviation.

Plaintiff argues that poor sales performance at Harbour Watch could not have been the true reason for Defendant's constructive termination of her employment because conditions there were very unfavorable for sales.  On that basis, she contends that the termination of her employment would not qualify as a reasonable business decision.  Plaintiff bases that contention upon the Court of Appeals' decision in <u>Wexler v. White's Fine Furniture, Inc.</u>, 317 F.3d 564 (6th Cir. 2003).

In <u>Wexler</u>, the Court of Appeals held that "the reasonableness of an employer's decision may be considered to the extent that such inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation."  <u>Id</u>. at 576.  The <u>Wexler</u> court did not hold, however, that a finder of fact may always reject an employer's stated reason for an employment decision as pretext simply because it seems unreasonable to the finder of fact.  Rather, the reasonableness may be examined to determine whether it "sheds light" on the truthfulness of the articulated reason.  <u>Id</u>.  If it

13

does not, the finder of fact may not reject the articulated

reason as pretext without some evidentiary basis for doing so.

In this case, Plaintiff contends that her poor sales

performance at Harbour Watch was not a reasonable business reason

for terminating her employment because conditions for sales were

so unfavorable at that complex.  The employer in Wexler, supra,

had articulated a similar reason for the termination of the

employment of the plaintiff in that case.  In Wexler, the Court

of Appeals recognized that sales were, in fact, poor but

concluded that the inquiry into the reasonableness of the

employer's decision had the potential for shedding light on the

employer's actual motivation because subsequent employees

occupying the same position were not discharged for similarly

poor sales performance.  See Wexler, 317 F.3d at 577.  The

plaintiff in Wexler had, apparently, also offered evidence that

tended to show that the employer was aware that the decline in

sales was not the plaintiff's fault.  See id.

In this case, Plaintiff has not introduced any evidence

that, when considered together with the reasonableness of

Defendant's stated reason, sheds light on the truthfulness of

that reason.  For example, she has not identified evidence that

tends to show that Defendant did not actually believe that

Plaintiff was responsible for the poor sales.  Most

significantly, Defendant has introduced evidence showing that

subsequent sales counselors at Harbour Watch were also discharged

for poor sales there.  See Beckett deposition, p. 124.  In this

14

case, absent other evidence of pretext, an inquiry into the reasonableness of Defendant's decision to terminate Plaintiff's employment for poor sales would not be fruitful.

Plaintiff advised Greg Beckett that her husband was African-American in or about April 1999.  <u>See</u> Plaintiff's deposition, p. 84.  In her affidavit, she states that she "could sense a change in his view of" her and "perceived that he resented the fact that [Plaintiff] knew he had done something wrong and that he could no longer speak freely or make disparaging comments about African Americans. . . ."  Plaintiff's Affidavit, ¶3.

The Court is skeptical about the evidentiary value of Plaintiff's perceptions of Greg Beckett's attitudes absent any evidence in the form of statements from Mr. Beckett.  Her testimony about his attitudes is quite close to pure speculation about what transpired in Mr. Beckett's mind.  In any event, the evidence casts no shadow of doubt upon the stated reasons for Defendant's actions toward Plaintiff some eight months later.  A reasonable finder of fact simply could not conclude, in the absence of any other evidence to support such a conclusion, that Mr. Beckett harbored some unspoken animus toward Plaintiff for that period of time but chose not to act upon it.

Plaintiff also contends that Greg Beckett's request that she develop a business plan was a response to her informing him that she might require surgery for her Meniere's Disease and that such a response constitutes evidence of pretext.  Assuming

that an employer immediately and negatively reacts to a request for an accommodation for a medical condition, an employee might be able to prove animus on the part of the employer related to the medical needs of the employee.  Plaintiff cannot prove such an immediate and negative response, however.

At Plaintiff's deposition, she testified that she informed Mr. Beckett in August 2000 that she might require surgery.  She testified that he did not respond.  See Plaintiff's deposition, p. 119.  She also testified that Mr. Beckett requested the business plan in early September.  See id., p. 106. She did not testify that Mr. Beckett made any connection between the two at the time of the request for a business plan. Plaintiff's argument that one was a response to other is not supported by any evidence.  Having failed to identify evidence of a connection, Plaintiff cannot rely upon such a connection to establish pretext.

Plaintiff observes that her colleague Janet Moxley has testified that Greg Beckett told her that Plaintiff's husband is African-American and that Mr. Beckett had "stuck his foot in his mouth" by making a racially insensitive remark in Plaintiff's presence.  See Moxley deposition, pp. 11-12.  That evidence lends no support to Plaintiff's pretext arguments.  It certainly does not suggest that Mr. Beckett had any animus based upon Plaintiff's marriage to an African-American man.

Ms. Moxley also testified that Mr. Beckett had advised her to "be careful" with Plaintiff because she was "trouble" and

16

"not manageable." Id., p. 20. While that testimony may tend to suggest that Greg Beckett did not like Plaintiff and that his dislike was a motivation for her discharge, it does not satisfy Plaintiff's burden of establishing pretext.

At best, Ms. Moxley's testimony may suggest that Plaintiff's poor sales performance was not Defendant's reason, or its sole reason, for discharging her. Instead, it may suggest, Defendant was also motivated by Greg Beckett's dislike for Plaintiff. Accordingly, it may serve as evidence in support of a showing of pretext in accordance with the second model identified in Manzer, supra. Evidence that tends to show that the stated reason for an adverse employment action did not actually motivate the action is insufficient to establish pretext, however, absent additional evidence that tends to show that discriminatory animus was the actual motivation for the decision. See Kline, 128 F.3d at 346. This is especially appropriate when the evidence related to the second Manzer model tends to show that the actual reason for the adverse employment action was another nondiscriminatory reason. In other words, the fact that Greg Beckett may have been motivated by a dislike for Plaintiff, as well as, or in addition to, her poor sales performance, moves Plaintiff no closer to establishing that her sex, race, or disability were the real reasons for her constructive discharge.

Plaintiff's final attempt to demonstrate pretext is a comment that two of Plaintiff's colleagues claim that Greg Beckett made at a sales meeting after Plaintiff's resignation to

the effect that he would not hire any more women.  See Perkins Affidavit, ¶ 11; Helms Affidavit, ¶ 6.  Even if the finder of fact were to believe that Beckett made the statement, the statement does not constitute evidence that Plaintiff's sales performance was not poor, that Greg Beckett was not actually motivated by Plaintiff's poor sales performance, or that her poor sales performance was insufficient to warrant her discharge.  The statement is particularly unavailing as evidence of pretext when considered together with the absence of evidence tending to show that Greg Beckett terminated the employment of all women at the same time as Defendant allegedly constructively discharged Plaintiff.

In sum, the Court concludes that Plaintiff could not establish pretext even if she were able to establish that Defendant had constructively discharged her in December 2000.  Accordingly, her discrimination claims fail for a second reason.

C.   The Public Policy Claim

Plaintiff bases her claim of wrongful discharge in violation of Ohio public policy upon her alleged constructive discharge for refusing to place false "Sold" signs in front of Harbour Watch condominia and her complaints about the unavailability of condominium documents that Defendant was required to provide to purchasers of condominia under Ohio law.  In order to prove a claim of wrongful discharge in violation of

18

Ohio public policy, a plaintiff must demonstrate each of the following:

> (1) that a clear public policy existed and was manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity" element);
>
> (2) that dismissing an employee under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy" element);
>
> (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element); and
>
> (4) that the employer lacked an overriding legitimate business justification for the dismissal (the "overriding justification" element).

See Wiles v. Medina Auto Parts, 96 Ohio St.3d 240, 242 (2002). The first two elements are questions of law. See Collins v. Rizkana, 73 Ohio St.3d 65, 70 (1995). "The jury decides the factual issues relating to causation and overriding justification." Id.

As regards Plaintiff's refusal to place false "Sold" signs in front of condominia, Plaintiff has not identified a clear public policy manifested in a constitution, statute, regulation, or in the common law against the practice. She points to the "spirit" of Ohio law but not to any particular legal proscription. The Court is not persuaded. In any event, Plaintiff cannot establish that her constructive discharge would jeopardize the public policy in question.

Plaintiff concedes that, when she refused to place the false "Sold" signs in front of condominia, Greg Beckett took no

action against her and did not repeat the suggestion.  The fact
that Plaintiff may have been discharged some months later does
not jeopardize a policy against the use of false "Sold" signs.
Accordingly, as a matter of law, Plaintiff's claim fails to the
extent that it is based upon her refusal to place false "Sold"
signs in front of condominia.

Plaintiff also alleges that Defendant constructively
discharged her for complaining about the unavailability of
documents that Defendant was required to provide to purchasers
under Ohio law.  Her complaint relates to the unavailability of
those documents when prospective purchasers visited the Harbour
Watch complex.  She cites O.R.C. §§ 5311.25 and 5311.26 as the
manifestation of the public policy in question.  The first
statute requires that certain provisions be included in
condominium instruments.  It does not require that any specific
document be furnished to a prospective purchaser when he or she
visits a condominium complex.  Accordingly, the termination of
Plaintiff's employment under the circumstances she alleges would
not jeopardize the policy manifested in O.R.C. § 5311.25.

The second statute, O.R.C. § 5311.26, requires that a
seller of condominia provide to prospective purchasers a readable
and understandable written statement of circumstances and
features.  If Plaintiff could establish that she was discharged
for complaining about Defendant's failure to provide such a
statement to prospective purchasers of Harbour Watch condominia,
she might be able to establish the clarity and jeopardy elements

20

of her claim.  She has not identified evidence in support of the
causation element, however.

As the Court has already concluded, Plaintiff cannot
prove that she was constructively discharged.  Accordingly, she
cannot prove that her discharge was motivated by her complaints
about the unavailability of condominium documents.

Even if Plaintiff could prove that she was
constructively discharged, she has not identified any evidence
that tends to show that Defendant was motivated by animus
resulting from or related to her complaints.  With respect to the
causation element of the claim, Plaintiff cites only evidence
that tends to show that Greg Beckett was frustrated or infuriated
that Plaintiff repeatedly raised the issue because the provision
of those documents was not his responsibility and he could not
remedy the problem.  See Beckett deposition, pp. 89-90; Perkins
Affidavit, ¶ 4.  None of the evidence cited by Plaintiff tends to
show that Greg Beckett wanted to terminate Plaintiff's employment
because she complained about Defendant's failure to provide
documents.  Accordingly, the Court is persuaded that, even were
Plaintiff able to prove that she was constructively discharged,
she could not establish the causation element of the claim for
wrongful discharge in violation of Ohio public policy.  Defendant
is entitled to summary judgment with respect to that claim.

D.  Retaliation

Plaintiff asserts a claim for retaliation in this action.  Specifically, she alleges that Defendant retaliated against her, in violation of O.R.C. § 4112.02(I), for informing Greg Beckett that she might require surgery to alleviate symptoms of Meniere's Disease.  Plaintiff alleges that the retaliation took the forms of a request that she develop a business plan and her constructive discharge.

In order to prove a claim of retaliation under Ohio law, Plaintiff must prove that she engaged in activity that is protected by the statute, that she suffered an adverse employment action, and that her activity and the adverse employment action were causally connected.  See Peterson v. Buckeye Steel Casings, 133 Ohio App.3d 715, 727 (Franklin Cty. 1999).  Plaintiff did not request leave for surgery.  She did not request an accommodation for her alleged disability.  She simply informed Defendant that she might, at some indefinite future date, require surgery.  She has not identified support for the proposition that informing an employer of a potential need for surgery in the indefinite future is an activity protected by Ohio's statute prohibiting disability discrimination.

Equally fatal to Plaintiff's retaliation claim is her failure to identify evidence of a causal connection between her informing Defendant of the possibility that she would need surgery in the future and an adverse employment action.  The Court has noted, in the context of its analysis of Plaintiff's assertion of pretext, that none of the evidence identified by

22

Plaintiff suggests that her statement about a possible need for surgery was causally connected to Greg Beckett's request for a business plan.[2]  The record is equally devoid of evidence connecting Plaintiff's statement about her possible need for surgery in the future and her alleged constructive discharge.  In light of those deficiencies in the evidence identified by Plaintiff, Defendant is entitled to summary judgment with respect to Plaintiff's retaliation claim.

    D.   <u>Conclusion</u>

      For the reasons set forth herein, the Court hereby **GRANTS** Defendant's motions for summary judgment (Doc. 14 and Doc. 26).  This action is **CLOSED**.

     **IT IS SO ORDERED**.

                                         _____/s/_____
                                         Sandra S. Beckwith
                                         United States District Judge

---

[2]Plaintiff has also failed to identify legal support for the notion that a request by an employer that an employee formulate a business plan or a plan for future sales is an adverse employment action.