LEXSEE 1998 US APP LEXIS 10543

**LETHA GRANBERRY, Plaintiff-Appellant, v. BAPTIST MEMORIAL HOSPITAL, Defendant-Appellee.**

Nos. 97-5543; 97-6135

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

*1998 U.S. App. LEXIS 10543*

May 21, 1998, Filed

**NOTICE:** [*1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 24 LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 24 BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**SUBSEQUENT HISTORY:** Reported in Table Case Format at: *1998 U.S. App. LEXIS 19615*.

Certiorari Denied October 19, 1998, Reported at: *1998 U.S. LEXIS 6765*.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE. 93-02316. Gibbons. 7-31-97, 3-21-97.

**DISPOSITION:** AFFIRMED.

**LexisNexis (TM) HEADNOTES - Core Concepts:**

**COUNSEL:** For LETHA GRANDBERRY, Plaintiff - Appellant (97-5543, 97-6135): Connie K. Westbrook, Memphis, TN.

For BAPTIST MEMORIAL HOSPITAL, Defendant - Appellee (97-5543, 97-6135): Paul E. Prather, Steven W. Likens, Kiesewetter, Wise, Kaplan, Schwimmer & Prather, Memphis, TN.

For BAPTIST MEMORIAL HOSPITAL, Defendant - Appellee (97-6135): J. Edward Wise, Kiesewetter, Wise, Kaplan, Schwimmer & Prather, Memphis, TN.

**JUDGES:** Before: JONES, MOORE and COLE, Circuit Judges.

**OPINIONBY:** R. GUY COLE, Jr.

**OPINION:**

OPINION

**R. GUY COLE, Jr. Circuit Judge.** Plaintiff Letha Granberry appeals the district court's grant of defendant Baptist Memorial Hospital's ("BMH") motion for summary judgment, dismissing Granberry's complaint alleging that BMH [*2] discriminated against her based on her race in violation of *42 U.S.C. § 1981* and the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101, *et seq.* Granberry alleges that as a student at the Baptist School of Nursing ("School of Nursing" or "School"), she was subjected to racial harassment which caused her to fail two courses, resulting in her dismissal from the School. Granberry also appeals from the district court's order affirming the award to BMH of its deposition costs, pursuant to Fed. R. Civ. P. 54(d) and *28 U.S.C. § 1920*.

For the following reasons, we **AFFIRM** the judgment of the district court.

I.

A. Procedural Background

Granberry's complaint alleged that BMH discriminated against her based on her race, in violation of *42 U.S.C. § 1981* and the THRA, when it dismissed

**EXHIBIT C**

her from the School of Nursing. Granberry sought readmission to the School of Nursing and injunctive relief as well as compensatory and punitive damages.

BMH subsequently moved for summary judgment, and on March 17, 1997, the district court granted BMH's motion. Granberry then filed a "Motion to Reconsider," n1 along with supporting memoranda and declarations from Jenny Newell [*3] and Candace Smothers and an unsigned statement from James Poteet, all of whom were students at the School of Nursing at the same time as Granberry. In the meantime, Granberry also appealed the district court's grant of summary judgment in favor of BMH to this court. The district court denied Granberry's motion, and one month later, the district court clerk entered its order taxing costs against Granberry. Granberry then filed a motion seeking the district court's review of the costs taxed to her and amended her notice of appeal to include an appeal from the district court's denial of her motion. The district court thereafter affirmed the clerk's order taxing BMH's costs to Granberry, and Granberry amended her notice of appeal a second time to include an appeal from the district court's affirmance of the taxation of costs.

n1 The district court interpreted this anomalous motion as a motion to alter or amend the judgment, pursuant to Fed. R. Civ. P. 59(e).

**B. Factual Background**

In August 1989, Granberry [*4] entered the Baptist School of Nursing as a provisional student. n2 The School of Nursing maintained a policy allowing students to fail and repeat only one nursing course. If a student failed a second course, the School of Nursing would automatically dismiss her. Granberry failed "Nursing 1301-Obstetrics and Gynecology" in the October 1991 term. At the time, Granberry acknowledged in writing that the School was permitting her to repeat the course and that her failure of another course would result in her dismissal. She subsequently repeated and passed Nursing 1301. However, in the May 1992 term, Granberry failed "Nursing 1302-Pediatrics." As a result, the School of Nursing dismissed Granberry in July of 1992. n3

n2 Granberry was a "provisional" student because her ACT score was slightly lower than the score usually required for admission to the School of Nursing.

n3 The School of Nursing maintains a process known as "Problem Solving" by which a student can appeal a grade to a committee of students and faculty members other than the one who assigned the disputed mark. Granberry availed herself of this process, and the committee upheld her failing grade.

[*5]

In her complaint, Granberry claimed her dismissal was "racially motivated" and that white students were given preferential treatment in the Nursing Program with respect to grading course material, course work, appeals and loans. Granberry listed her damages as "lost income, emotional pain and suffering, including humiliation and embarrassment, and loss and enjoyment of life."

**C. District Court Order**

In granting BMH's motion for summary judgment, the district court found that Granberry had failed to establish a *prima facie* case of discrimination by a preponderance of the evidence, because Granberry had not produced evidence that BMH treated her differently from similarly situated white students. n4 The district court reasoned that Granberry's evidence that the School of Nursing treated her differently than it treated white students was limited to her response to BMH's interrogatory in which she contended that Toni Skrocki, a white classmate who had also previously failed one course, had received "extra points" in order to pass a second course. The district court found this evidence to be inadmissible and accordingly declined to consider it.

n4 The district court's analysis followed the framework set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)* and *Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089,* which are discussed more fully below.

[*6]

The evidence in question, Granberry's response to BMH's interrogatory, described a conversation between herself and Course Chairman Irene Reed in which Reed allegedly told Granberry that Granberry's class projects in "Ob/Gyn" were not reviewable "to see if more points could be given." According to Granberry, she told Reed that she knew Reed had bolstered another student's grade with extra points so that the unnamed student could pass a failed course. Granberry claimed that Reed became upset and demanded to know the name of the student whom Granberry thought had received extra points. Allegedly, Granberry refused to divulge the student's identity, but the conversation continued for about an

hour, at which time Reed purportedly said that she would "talk to Toni Skrocki." JA at 28.

In determining that Granberry's evidence was inadmissible, the district court reasoned that Granberry's response to the interrogatories demonstrated no personal knowledge regarding Reed's knowledge of Skrocki's grade. The district court also noted that Granberry's account of the events did not amount to an admission by Reed that Skrocki received extra points, finding the more plausible inference to be that [*7] Reed merely agreed to inquire about Skrocki's alleged receipt of extra points. The district court further found that Granberry had presented no evidence that the same instructor had graded her and Skrocki or that she and Skrocki had failed the course by similar margins, and therefore Granberry had not established that she and Skrocki were similarly situated. Without any evidence of a similarly situated student receiving preferential grade treatment, the district court concluded that Granberry had not established a *prima facie* case of discrimination.

The district court determined that even if it were to have found that Granberry established a *prima facie* case, BMH had articulated a legitimate, non-discriminatory reason for Granberry's dismissal: the School's announced policy of dismissing any student who failed two courses. The district court then addressed Granberry's evidence that BMH's proffered non-discriminatory reason for her dismissal was merely pretext for racial discrimination.

Granberry attested to several incidents which she claimed were evidence of ongoing racial harassment. First, Granberry alleged that she received a "U," meaning "Unsatisfactory," for saying [*8] that St. Jude, a hospital where the students had done a clinical rotation, was boring and for completing self-evaluation paperwork during a post-clinical conference although white students who engaged in the same behavior had not received "U's." The district court determined that Granberry's proffered evidence of this disparate treatment amounted to inadmissible hearsay from the unidentified students who had not received "U's" and that Granberry had not demonstrated that the course instructors who graded her were aware of the supposedly similar remarks and conduct of the other students.

Second, Granberry cited as additional evidence of pretext an incident during which Irene Reed allegedly called Granberry by another student's first name although she knew Granberry's name and called no other students by the wrong name. Granberry claimed that this event was "an attempt to further harass and humiliate" her. The district court deemed Granberry's contention that Reed's mistake was racially motivated "nothing more than unsupported speculation." Granberry also pointed to an occasion on which Reed allegedly would not allow Granberry to register for a clinical nursing course without presenting [*9] her Cardio-Pulmonary Resuscitation ("CPR") certification card. The district court found that the School of Nursing maintained a clear policy that students could not enroll in clinical courses without presenting valid CPR cards and determined that Granberry had not presented any evidence that white students were allowed to enroll in the course without showing CPR cards, noting that the Director of the School of Nursing eventually allowed Granberry to attend her clinical course without presenting her CPR card.

As additional evidence of discrimination, Granberry claimed that in March 1992, when she registered to repeat the Ob/Gyn course which she had failed, her name was missing from the lists of student "rotation groups," although all of the other enrolled students' names appeared on the lists. n5 BMH indicated that Granberry's name did not appear on any group roster because she had not attended classes the previous semester. The district court found that Granberry had presented no evidence that the omission of her name from the lists was based on her race, noting that once Granberry apprised school officials of the oversight, she was allowed to join the rotation group of her choice. [*10]

n5 Neither BMH nor the district court addressed Granberry's allegation that in May 1992, when she registered for her Pediatrics rotation, her name was left off the course's roster a second time.

Granberry's final evidence of pretext was her claim that the School of Nursing concealed the existence of a scholarship from her. Granberry asserted that after failing her first course, she asked a financial aid officer about a fund established to help students pay for the repetition of failed courses. The officer informed Granberry that no such fund existed and did not mention the scholarship in question, the Whitehead Foundation scholarship ("Whitehead scholarship"). The district court described the eligibility requirements for the Whitehead scholarship and found that the grants "[were] not earmarked to help students pay for the cost of repeating failed courses." The district court determined that the School of Nursing's Information Guide clearly identified the Whitehead scholarship, indicating that the scholarship [*11] was not concealed from anyone and that the School offered no scholarships for the purpose of helping students pay for repeated courses; thus, the financial aid officer had answered Granberry truthfully. The district court also noted that Granberry had not demonstrated that "any white student received money

1998 U.S. App. LEXIS 10543, *

through the Whitehead Foundation who did not ask to receive money from the Whitehead Foundation." JA at 32.

After considering all of Granberry's proffered evidence in support of her claim, the district court granted BMH's motion for summary judgment, concluding that no reasonable jury could find that BMH's reason for dismissing Granberry was a pretext for discrimination. n6

> n6 Because § 1981 and the THRA require courts to apply the same analysis to claims of race discrimination, the district court concluded that Granberry's claim failed under both statutes.

II.

We review *de novo* the district court's grant of a defendant's motion for summary judgment. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. [*12] 1996). "This court must affirm the district court only if it determines that the pleadings, affidavits, and other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)) (quotation omitted). We must view the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

"The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of the case." *Hartsel*, 87 F.3d at 799 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)). "The plaintiff must present more than a mere scintilla of evidence in support of her position; the plaintiff must present 'evidence on which the jury could reasonably find for the plaintiff.'" *Hartsel*, 87 F.3d at 799 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). "The mere possibility of a dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, [*13] 582 (6th Cir. 1992).

III.

A.

As an initial matter, Granberry challenges the district court's determination that some of her proffered evidence of race discrimination would have been inadmissible at trial and was therefore insufficient to defeat BMH's motion for summary judgment. The district court found that Granberry's only evidence in support of her claim that she was treated differently from similarly situated white students, her response to BMH's interrogatories, was inadmissible because it involved information about which Granberry had no personal knowledge. We accordingly review *de novo* the district court's determination that Granberry's response was inadmissible hearsay. *See Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992) (stating that although a district court's evidentiary determinations are generally reviewed for an abuse of discretion, a district court's determination that proffered evidence is hearsay within the meaning of the Federal Rules of Evidence is a conclusion of law subject to *de novo* review) (citing *United States v. Levy*, 904 F.2d 1026, 1029 (6th Cir. 1990)).

In accordance with the Federal Rules of Evidence, neither the district [*14] court nor we may consider hearsay evidence on a motion for summary judgment. *See U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997); *see also Hartsel*, 87 F.3d at 799 (citing *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994)). A *de novo* review requires us "to make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis." *Hartsel*, 87 F.3d at 799. Granberry's response to BMH's interrogatory describing the incident on which she bases her claim that the School of Nursing treated her differently than it treated white students reads in part:

> On December 20, 1991, I met with Ms. Irene Reed about a low grade (D) I received on a paper in Ob/Gyn. I told her that I wanted my two class projects looked at to see if I could get more points. She looked at my research paper and told me that she did not think it was a good paper and that the grade I was given was a generous one . . . I asked if I was the only one who had been in this situation before, i.e. ask to have have [sic] projects reviewed to see if more points could be given. She told [*15] me that other persons either passed or failed and that they had the grades to pass and if they did not, they failed. I told her that I knew that was not true because she had given another individual extra points so that she could pass the course. Ms. Reed got very upset and demanded that I tell her who the other student was that got the extra points. I would not tell her; she already knew. After about an hour, she finally said that she would talk to Toni Skrocki. Ms. Skrocki was the person Ms. Reed gave the

extra points to so Ms. Skrocki could pass the course....

JA at 206-07. In evaluating this evidence, the district court stated simply, "[Granberry] has no personal knowledge of what Ms. Reed knew; thus, her conclusion on this point is inadmissible." JA at 28.

"Hearsay is a statement, other than one made by the declarant . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c) (internal quotation omitted). Hearsay not within one of the prescribed hearsay exceptions is inadmissible. See Fed. R. Evid. 802. In this case, Granberry sought to introduce her own statement about Reed's alleged knowledge of events to prove Granberry's charge [*16] that Skrocki received extra points. Granberry's proffered evidence, her response to the interrogatories, is not the statement of Reed, the declarant, and Granberry offered the evidence to prove the truth of the matter asserted, that Skrocki received extra points; thus, Granberry's evidence is inadmissible hearsay.

Moreover, even if Granberry's account of the occasion in question is accurate, it does not establish that Reed gave Skrocki extra points. Granberry's only "evidence" of disparate treatment is her own conclusory statement about Reed's state of mind. Because Granberry has no first-hand knowledge of Reed's thoughts, her conclusions about the matter would have been inadmissible at trial. See United States v. Lanci, 669 F.2d 391, 394-95 (6th Cir. 1982) ("What a person . . . may imagine or guess the facts to have been is never admissible."); see also Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.").

Irene Reed is now deceased. Granberry therefore contends that even if her statement concerning Reed's state-of-mind is hearsay, it is admissible under a myriad [*17] of exceptions to the hearsay rule, including Fed. R. Evid. 804(a)(4), allowing courts to admit hearsay statements when the declarant is unavailable because she has died. This argument is without merit. The fact remains that Granberry does not seek to admit any statement made by Reed. Rather, Granberry seeks to introduce her *own* statement as to Reed's state-of-mind, a matter about which Granberry possesses no personal knowledge. Hearsay exceptions are subject to the requirements of Rule 602. See Lanci, 669 F.2d at 395 (stating that hearsay exception Fed. R. Evid. 804(b)(3) is subject to requirements of Rule 602). Pursuant to Rules 602 and 802, we agree with the district court's determination that Granberry's evidence concerning Skrocki's grade was hearsay about which Granberry had no personal knowledge and was therefore inadmissible.

B.

Granberry also argues that the district court erred in its determination that Granberry's evidence that white students told her that they completed paperwork during a post-clinical conference and did not receive grades of "U" was inadmissible hearsay. We likewise review this determination *de novo*. See Hancock, 958 F.2d at 1371. [*18]

The district court found that the only evidence Granberry presented that white students did not receive "U's" for doing their paperwork during conference was her own statement that two white students told her that they did not receive "U's" for doing their paperwork. The only evidence directly addressing the issue of the "U's" received for completing paperwork that was available to the district court at the time it ruled on BMH's motion for summary judgment was Granberry's deposition testimony, which reads in relevant part:

> Q: Do you have personal knowledge of what the other students got as far as a grade in their clinical?
>
> A: Yes, I went out and asked one of the students, well, two of them rather and they did not get U's.

JA at 146-47. As discussed *supra* Part III.A., Fed. R. Evid. 801(c) and 802 proscribe the admission of statements, other than those of the declarant, offered into evidence to prove the truth of the matter asserted. Here, Granberry asked the district court to consider her statement that two unidentified declarants said that they had not received "U's" for completing paperwork during post-clinical conferences to prove that Granberry was treated [*19] disparately because of her race. This is hearsay not within any exception to the rule; we accordingly agree with the district court's conclusion that Granberry's deposition testimony on the "U's" others may have received for completing paperwork during conference was inadmissible.

C.

With regard to the substance of her claim, Granberry contends that the district court erred in granting BMH's motion for summary judgment. She contests the district court's determination that she did not establish a *prima facie* case of race discrimination under either § 1981 or the THRA. The *McDonnell Douglas* framework applies to claims of discrimination under both statutes; the following analysis therefore applies to Granberry's claims under both § 1981 and the THRA. See Mitchell, 964 F.2d at 581 (explaining that *McDonnell Douglas* framework applies to § 1981 claims); *see also Loeffler v.*

*Kjellgren*, 884 S.W.2d 463, 469 (Tenn. Ct. App. 1994) (stating that *prima facie* case of discrimination under THRA is established with criteria set forth in *McDonnell Douglas*) (citing *Bruce v. Western Auto Supply Co.*, 669 S.W.2d 95, 97 (Tenn. Ct. App. 1984)).

Section 1981 provides [*20] that "all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." *42 U.S.C. § 1981*. n7 Under the *McDonnell Douglas* burden-shifting principle, a plaintiff bears the burden of establishing by a preponderance of the evidence a *prima facie* case and creating a presumption of discrimination by demonstrating: (1) membership in the protected class; (2) that she suffered from an adverse action; (3) that she was qualified for the position; and (4) that she was treated differently from similarly situated members of the unprotected class. *See Mitchell*, 964 F.2d at 582-83 (6th Cir. 1992) (citing *McDonnell Douglas*, 411 U.S. at 802); *see also Hartsel*, 87 F.3d at 800. Once the plaintiff establishes a *prima facie* case, a defendant may offer any legitimate, non-discriminatory reason for the action, which the plaintiff may rebut by evidence of pretext; however, the burden of proof always remains with the plaintiff. *Id.* (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993)).

   n7 At the summary judgment stage, BMH asserted that the THRA did not apply to Granberry's claim. The district court did not reach this question because it found that THRA was subject to the same analysis as § 1981 and that Granberry's claim failed under both statutes. We need not address this question for the same reasons.

[*21]

The district court found that Granberry did not satisfy the fourth requirement for establishing a *prima facie* case because she did not demonstrate that she was treated differently from similarly situated white students. We agree. Granberry's admissible evidence, her deposition testimony and her responses to the interrogatory, contain nothing more than her unsubstantiated allegations that she was penalized while white students were not. These allegations alone do not establish a *prima facie* case of race discrimination. Without evidence that she was treated differently than similarly situated white students, Granberry does not satisfy the fourth requirement of the *McDonnell Douglas* framework. Therefore, we conclude that she did not establish a *prima facie* case that BMH discriminated against her based on her race.

As the district court noted, even if Granberry had established a *prima facie* case of discrimination, BMH articulated a legitimate, non-discriminatory reason for dismissing her. "It is important to note that the defendant need not prove a nondiscriminatory reason for [an adverse action], but need merely articulate a valid rationale." *Hartsel*, 87 F.3d [*22] at 800. Granberry does not dispute that the School of Nursing maintained a policy of dismissing students who failed more than one course. In fact, after she failed the first course, Granberry acknowledged in writing that the failure of a second course would result in her dismissal. Rather, Granberry asserts that BMH's non-discriminatory rationale was only a pretext for racial discrimination, citing a "lengthy pattern of incidents involving racial discrimination, harassment and intimidation" directed at her "by Irene Reed and others" which allegedly contributed to Granberry's failure at the School of Nursing.

Granberry argues that the lengthy pattern of discrimination was evinced by, among other incidents, Reed's calling her by the name of another student. However, again, Granberry does not demonstrate that Reed did this because Granberry is black, or that Reed never called white students by names other than their own. The only evidence Granberry presents of this incident is her own deposition testimony, which does not establish that Reed singled her out because of her race.

Granberry also asserts that the incident in which she was delayed from enrolling in a clinical course because [*23] she did not have her CPR certification card constituted racial harassment. However, Granberry concedes that the School of Nursing maintained a clear policy that students needed to present CPR cards in order to enroll in clinical courses, and yet the director of the School of Nursing allowed Granberry to enroll in the clinical course by presenting the CPR class roster, listing her name and passing grade in CPR, in lieu of the certification card. This incident is not at all demonstrative of racial harassment.

In addition, the incident in which her name was omitted from "rotation group" lists of students enrolled in a course for which she had registered is unaccompanied by any evidence that this incident was based on her race. Moreover, once Granberry apprised School officials that her name was absent from the list although she had registered for the course, they allowed her to join the rotation group of her choice. This incident may have humiliated Granberry, but it is simply not evidence of racial discrimination.

Finally, the alleged concealment of the Whitehead scholarship on the basis of racial discrimination is not supported by the evidence. The School of Nursing's Student Information [*24] Guide clearly described the

availability of the Whitehead scholarship, and the guide was accessible to all students. Moreover, the Whitehead Foundation's funds were not earmarked to pay for students to repeat failed courses; therefore, it is understandable why the question Granberry posed to the financial aid officer did not elicit information about the Whitehead scholarship. Granberry's contention that this event was evidence of pretext is unfounded.

We conclude that Granberry has presented no evidence that the School of Nursing's rationale for her dismissal, her failure of two courses, was a pretext for racial discrimination. There is simply no admissible evidence in the record indicating that the School of Nursing dismissed Granberry for any reason other than her failure of two courses. Granberry's claims that racial harassment contributed to her failure are unsubstantiated. We accordingly affirm the judgment of the district court. n8

> n8 Granberry also appeals the district court's denial of her motion to reconsider the judgment. We typically review denial of Rule 59(e) motions to reconsider for an abuse of discretion. However, where a Rule 59(e) motion seeks reconsideration of a grant of summary judgment, as Granberry's did here, we conduct a *de novo* review. See *Keweenaw Bay Indian Community v. United States*, 136 F.3d 469, 474 (6th Cir. 1998). Because Granberry alleges the same mistakes of law in her appeals from the district court's grant of BMH's motion for summary judgment and from the denial of her motion to reconsider, our analysis applies to both appeals.
>
> Even if we consider the evidence which Granberry submitted to the district court with her motion to reconsider the judgment, Granberry has not demonstrated that she was treated differently than similarly situated white students. The declarations of Granberry's classmates, Candace Smothers and Jenny Newell, do not contain establish that they were similarly situated to Granberry. James Poteet's declaration, which states simply that he never received a "U" for filling out paperwork during post-clinical conferences, does not demonstrate whether the instructor who gave Granberry a "U" for completing paperwork knew of Poteet's behavior and nevertheless gave him a higher mark.

[*25]

IV.

Granberry challenges the district court's affirmance of the clerk of the district court's taxation of BMH's deposition costs to her. She argues that BMH did not need to take her deposition, and therefore the clerk should not have awarded BMH the cost of the deposition.

We review an allowance of deposition costs for an abuse of discretion. *Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir. 1989). 28 U.S.C. § 1920 provides in relevant part, "A judge or clerk of any court of the United States may tax as costs . . . (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case . . . (4) Fees for exemplification and copies of papers necessarily obtained for use in the case." Fed. R. Civ. P. 54(d) further supports the allowance of costs by providing that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." This court has interpreted subsections (2) and (4) of § 1920 as authorizing courts to tax as costs the expenses of taking, transcribing and reproducing depositions. See *Sales*, 873 F.2d at 120. "Ordinarily, the costs of taking and transcribing and reproducing depositions [*26] reasonably necessary for the litigation are allowed to the prevailing party. Necessity is determined as of the time of the taking, and the fact that a deposition is not actually used at trial is not controlling." *Id.*

In this case, the clerk of the district court awarded BMH $ 884.80 in costs for fees of the court reporter and transcript of the deposition of the plaintiff. These costs are clearly among those which § 1920 enumerates. In affirming this award, the district court reasoned that Granberry had not met her burden to overcome the presumption favoring an award of costs to the prevailing party. BMH deposed Granberry before it moved for summary judgment. BMH's belief that the deposition of the plaintiff in the case in which it was a defendant was necessary was undoubtedly reasonable, and there is no suggestion that BMH incurred any unnecessary costs in taking Granberry's deposition. Therefore, we conclude that the district court did not abuse its discretion in taxing BMH's deposition costs to Granberry.

V.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.